We will proceed to our first argued case, number 21-116, United States v. Aponte, which we're going to hear by Zoom. I just need counsel's name. Yes, Timothy Murphy. I'm sorry, I was waiting for the clerk to hand it to me, so I have it. So let's hear first from the appellant, Mr. Murphy. Thank you, Your Honor. I may have pleased the court, and I thank the court for allowing us to conduct this proceeding by Zoom. Your Honors, my client is appealing denial of his detention and release motion. He was at the time of the motion and at the time that the appeal was filed, housed at Allenwood Low in Pennsylvania. Thank you. A couple weeks ago, I found out that he was in a halfway house, and I informed the court by letter he's in a halfway house now in Rochester. With the court's permission, I would like to address the issue of moteness and contrast our situation to the Chestnut case that this court decided last year. Mr. Chestnut had an analogous situation. He was released during dependency of his appeal, his compassionate release appeal. He was released to supervised release, and this court found that the appeal was moot and dismissed it. We believe our situation is different. My client is now still an inmate of... Well, he might still be an inmate, but the circumstance, I mean, if your argument is based on the risk of contracting a disease, if he's in a different facility, wouldn't that make a difference? And wouldn't the district court have to consider the different circumstances? That's true, Judge, but as far as it being moot or not, our distinction that we would make is that being under the BOP's custody still, we are still subject to the application of their COVID policies. It is a very different situation, and we would ask that it be sent back to district court to consider these new circumstances. We think that would be consistent with the legislative history behind the First Step Act. Is there something about the new circumstances under which he is confined that make it worse? What would be the risk under his new circumstances? I don't have that information to provide to the court, Your Honor, and obviously my opponent wouldn't have the information, had no opportunity to respond to such information. It would be something that would have to be inquired by the district court under these circumstances. We think, as set out in Brooker, the purpose of the First Step Act was to expand, expedite, and improve the compassionate release application process. We think remanding here under the circumstances would be consistent, and that's the sum and substance of our argument. Okay, well, thank you, Mr. Murphy. You've reserved time for rebuttal, so we'll hear from you again. Ms. Lee. Good morning. May it please the court, my name is Tiffany Lee, and I represent the United States. I too thank this panel and my opposing counsel for agreeing to allow these proceedings by Zoom. As to the issue of mootness, while the government acknowledges that Mr. Aconte is still under BOP custody, the fact remains is that no district court has had the opportunity to review what circumstances his current situation places him in. It could very well be that there's nothing extraordinary or compelling about his time at the Rochester halfway house in which he would require a motion for a sentence reduction. So, the best process would be for Mr. Aconte to file a new motion. The First Step Act does not prohibit him in any way from applying to the district court again with a new motion based on any new facts and circumstances he might have which describe his current housing situation at the halfway house. What is the difference between remanding and filing a new motion? He'd have to seek administrative remedies first? Would that be the requirement? I think he would be required to seek administrative remedies first, but the reality is there is no controversy right now vis-a-vis his conditions at the halfway house, which would be the basis upon which he would move under Section 3582C1A. So it would be the government's submission that this court should affirm and have Mr. Aconte have a new opportunity, if he were to choose, to file a new motion for a sentence reduction before the district court if there are such circumstances which he believes are extraordinary and compelling as of this time. So you're saying we should affirm the decision that he was not entitled to compassionate release from the low facility, but then he could file a new motion. So you're saying it is moot because this controversy is about his release from that facility. So why wouldn't we just dismiss it as moot then? And so this court could dismiss it as moot. You know, basically at the time we were, when I was first advised of this, I really didn't have the timing of it to really kind of assess what the government's position would be. But it would be, we believe that the issue should be dismissed as moot. And currently there is nothing extraordinary or compelling in terms of what his situation is. And, you know, he is now released from the circumstances of which he was complaining about at Lowenwood. Okay, unless my colleagues have any other questions. Thank you, Ms. Lee. Let's hear from Mr. Murphy again on rebuttal. Thank you, Your Honor. The idea of refiling, again, becomes problematic as we get closer to the ending date for his sentence, which is August 18th of this year. Realistically, if he would have to go through that entire process again, he's going to run out of time ultimately. By the time the motion practice is done, busy district court that does the rest, all these cases, we think that it's more consistent with the purpose of the First Step Act to remand it under the circumstances and have the judge take a look at these new circumstances. Well, just in terms of ordinary practice, like apart from the First Step Act, if in fact he was seeking release from a particular facility and he's no longer in that facility, he has been released from that facility, I mean, isn't this just a different case? I mean, why shouldn't we say that it just is moot? And if you have an objection to the new facility he's at, that's a different case. I would rely on the purpose of the First Step Act in that regard. It can't be, it can't really be separated from the fact that we are still in a pandemic and the purpose of the statute was to make it easier for inmates to get in front of judges and make their case. And when there's new circumstances and we have, we have a scenario where we're not going to have to use a lot of resources here, the judge, the district court judge, could just make an inquiry, maybe ask for submissions if necessary. That seems to be more consistent with the enactment of the First Step Act. Having to go through the process of exhausting remedies, he's going to run out of time ultimately. And I realize, Your Honor, last year, Your Honor- Well, it could be quicker, right? I mean, the reason that we require the exhaustion of administrative remedies is because the government might, should have a chance to fix the problem. I mean, if he really can point out a risk at his new facility, then maybe an administrative remedy would be quicker if there's some risk, right? That's true in theory, Your Honor. Of course, the reason for the First Step Act was because Congress stopped trusting the BOP to address this problem. And obviously, we always go and we always are required to exhaust administrative remedies because we think the people in charge, the experts, are the best people to go to first. Why waste the court's time if there's a lot of problems? But in this scenario, we're talking about the BOP, which has a long history of failing respectfully in this area. We think it would be more expedient for the court just to remand it under these circumstances. Okay. Thank you, Mr. Murphy. The case is-